UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Ike T. Rutledge, # 300604, ) | C/A No.: 4:11-272-MGL-TER |
| *aka, Ike Terrell Rutledge, formerly* # 1375888, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| Officer Porter, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff, proceeding *pro se,* filed this action under 42 U.S.C. § 1983[1] on February 3, 2011, alleging violations of his constitutional rights. At the time of the allegations raised in the complaint, Plaintiff was a pretrial detainee housed at the Orangeburg-Calhoun Regional Detention Center (OCRDC).[2] Based on the last address Plaintiff filed with the court, he is no longer incarcerated. Defendant filed a motion for summary judgment on September 10, 2012, along with a memorandum and exhibits in support of said motion. (Document #47). Because Plaintiff is proceeding pro se, he

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

[2]Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72.
    A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

was advised on or about September 11, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the Defendant's motion for summary judgment could result in the dismissal of his complaint.[3] The Plaintiff filed a response on December 27, 2012. (Doc. #67).

## I. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

---

[3] Plaintiff failed to file a response. A report and recommendation was entered on October 19, 2012, recommending that the action be dismissed pursuant to Rule 41b of the Federal Rules of Civil Procedure. On November 8, 2012, an order was entered whereby the report and recommendation was adopted and the case was dismissed with prejudice. (Doc. # 57). However, Plaintiff filed a motion for reconsideration on November 16, 2012, which the court granted and vacated the previous order. (Doc. # 62). Plaintiff was given until December 27, 2012, to file a response to the motion for summary judgment.

Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317.

Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with ... affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer

4:11-cv-00272-MGL     Date Filed 04/29/13    Entry Number 76     Page 4 of 11

Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## II. DISCUSSION

### A. ARGUMENT OF PARTIES

Plaintiff alleges that he was struck in the face by Defendant without provocation and placed in lock-up without being charged while detained at the OCRDC. Specifically, Plaintiff alleges as follows:

> On 7-8-10, while in the "Sallyport" with Officer Porter and a few other officers, Porter began to tell me (in a threatening manner) that I was stupid (he was pretaing[sic] to a situation that happened a few minutes prior). I ignored him the first couple of times that he said it. After maybe the third time, I asked him why did he feel I was stupid and he stated (with both hands in my face), "cause you stupid!" as another officer attempted to step in between us, the "Sally Ports" door opened up and Sgt. Woods pulled me out. At that time. Porter came out charging at me in a life threatening manner. Various officers tried to contain him, but wasn't able to do so. At one point, Porter got close enough to me to where he was able to snatch me by my uniform's shirt, but due to the fact that Sgt. Woods was pulling on me (not in a harmful way) Porter wasn't able to maintain his hold on me. A few seconds later, he was close enough to me to where he reached out and striked me across my face.

(Complaint at 3).

Plaintiff further asserts that he was placed in "lock-up" without being charged and that he filed grievances for assault and battery that went unanswered. (Complaint). Plaintiff requests "[m]onetary relief for Assault and Battery by Officer Porter in the amount of fifty-thousand dollars.

Also, two thousand dollars per day for each day I spent in lock-up and fed "Nutri loaf (which caused a lot of pain and suffering, mental and emotional stress)." (Complaint at 5).

Defendant filed a motion for summary judgment and memorandum arguing that the complaint should be dismissed because Plaintiff does not refer to any constitutional rights in his complaint but references "assault" and "assault and battery." Additionally, Defendant argues that as it is construed by the court as a §1983 claim, he moves for summary judgment on the grounds that there exists no genuine issue of material fact; no constitutional violation is presented by the facts and no valid cause of action is asserted against the Defendant; the Defendant did not violate Plaintiff's Constitutional rights; Defendant was not personally involved in any violation of Plaintiff's rights; respondeat superior and other theories of vicarious liability are inapplicable; and, Defendant did not engage in any activity which harmed the Plaintiff.

Defendant submitted the affidavit of Janet Williams who attests she is employed at the OCRDC and is familiar with the allegations of the complaint. (Williams' affidavit, doc. # 47-2). Williams asserts that on July 8, 2010, Plaintiff was belligerent, angry and uncontrollable as he claimed his charges had been entered incorrectly into the computer, and was demanding they be corrected. (Id.). Plaintiff was yelling and cursing, in a rage, swinging his arms and behaving in a physically threatening manner. (Id.). Plaintiff was yelling and standing at the control room door in Pod B, having crossed the yellow boundary line in violation of the detention center's rules. (Id.). Plaintiff was holding his third finger at Williams, and refusing to back away from the control room and return to his cell in response to Williams' directive to go to his cell. Sgt. Wood tried to calm Plaintiff down, with no success, and ordered him to be placed in lockdown for disorderly conduct and insubordination to a direct order from an officer. (Id.). Williams reported Plaintiff's violation

of institution rules by using profanity and gestures, and refusing to comply with an officer's directive. (Id.). Williams can recommend that an inmate be charged and disciplined but cannot make the charge herself. (Id.). Officer Porter began to escort Plaintiff away from the control room toward the sally port when Plaintiff became aggressive with Officer Porter, refusing to pick up his belongings and swinging his hands and cursing at Porter. (Id.). Williams attests that she never saw Officer Porter touch Plaintiff inappropriately or strike him, nor did she see any officer strike Plaintiff. (Id.).

Defendant submitted the affidavit of Wayne Wood who attests that he is the officer misidentified in the body of the Complaint as "Sgt. Woods." Woods is employed at the OCRDC, with the rank of Lieutenant, but was a Sergeant on July 8, 2010. (Wood's affidavit, doc. # 47-3). On July 8, 2010, Plaintiff was irate and was asserting that his charges had been entered into a computer erroneously and was demanding his charges be corrected. (Id.). Plaintiff was uncontrollable and there was no reasoning with him. (Id.). Plaintiff was in a rage, yelling, cursing, swinging his arms, and behaving in a physically threatening manner. (Id.). Plaintiff tried to assure him that if his charge was wrong, it could and would be corrected in the computer system as soon as Wood received Plaintiff's paperwork, that the arresting officer could be consulted and asked to correct any errors on his part, and the booking officers could be consulted to correct any errors on the detention center's part. (Id.). Plaintiff would not calm down so that Wood ordered him to be placed in lockdown for disorderly conduct and insubordination to a direct order from an officer.(Id.). As Plaintiff was being led to lockdown, Plaintiff refused to pick up his belongings and was aggressive toward Officer Porter with whom he exchanged hostile words. (Id.). Wood stepped between the two men to ensure they remained separate, directed Porter down the hall toward the control room, and

sent Plaintiff to lockdown with another officer. (Id.). Wood attests that he never saw Officer Porter, nor any officer, strike Plaintiff and never saw any marks on Plaintiff nor any indication that anyone had struck him. (Id.). Wood asserts that as a supervisor, if he ever saw Porter or any other officer strike an inmate, he would immediately recommend that he be charged and suspended. (Id.). Officer Porter was not the officer that charged Plaintiff with a violation. (Id.). An officer of Porter's rank can only make a recommendation for charges to a supervisor, and Porter did not make any recommendation of charges against Plaintiff. Plaintiff's charge arose from his behavior toward Officer Janet Williams, when he was cursing and refusing to obey orders.(Id.). Officer Porter did not handle any grievance or complaints of Plaintiff, as that is not his role. (Id.).

Defendant Porter submitted his affidavit in which he attests that he is employed at the OCRDC and is familiar with Plaintiff, the events of July 8, 2010, and the false allegations in the complaint. (Porter's affidavit, doc. # 47-4). On July 8, 2010, Porter was called to respond to Pod B of the detention center where he found Plaintiff in a rage, claiming that the charges on which he was being detained were wrong. (Id.). Plaintiff had crossed the yellow boundary line near the detention center control room and was at the control room door, in violation of the rules of the facility. (Id.). Plaintiff was yelling at officers, cursing, swinging his arms, and behaving in a physically threatening manner. (Id.). Plaintiff was repeatedly directed to back away from the control room door and return to his cell to await a response from a supervisor concerning his charges. (Id.). Multiple supervisors came to speak with Plaintiff, but he remained hostile, cursing and yelling. (Id.). Supervisors gave orders for inmate Rutledge to be removed from Pod B to the lockdown sections, but Plaintiff refused to pick up his belongings, was swinging his hands and cursing in rage, and had to be escorted to lockdown. (Id.). Porter attests that he never struck Plaintiff, nor did he touch him

inappropriately, and never saw any other officer do so. (Id.). Porter never charged Plaintiff with any violation arising from the July 8, 2010, incident as he is not authorized to make charges. (Id.). Porter can make a recommendation to a supervisor for charge, but did not do so in this instance. (Id.). Porter does not handle grievances or complaints of inmates, and was not responsible for handling any grievance of Plaintiff. (Id.).

Liberally construing Plaintiff's complaint, it appears he is attempting to allege that Defendant Porter subjected him to the use of excessive force by allegedly slapping him across his face. Excessive force claims raised by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment. Orem v. Rephann, 523 F.3d 442, 446 (4th Cir.2008).[4] To succeed on such a claim, the plaintiff must demonstrate that the defendants "inflicted unnecessary and wanton pain and suffering" upon the detainee. Whitley v. Albers, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. (Id.) (internal quotation marks omitted). The objective component is not as demanding because "[when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are

---

[4] Broadly speaking, "the Fourth Amendment only governs claims of excessive force during the course of an arrest, investigatory stop, or other seizure of a person," while the Due Process Clause of the Fourteenth Amendment governs excessive force claims made by a "pretrial detainee or arrestee." Orem, 523 F.3d at 446. (citations, quotation marks and alterations omitted); see also Robles v. Prince George's Cnty., Md., 302 F.3d 262, 268 (4th Cir.2002) ("Once the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply." (citation omitted)).

violated whether or not significant injury is evidence." Wilkins v. Gaddy, — U.S. ----, ----, 130 S.Ct. 1175, 1178, 175 Led.2d 995 (2010) (internal quotation marks omitted).

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley v. Albers, 475 U.S. at 322. In Whitley, the Supreme Court identified the following four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Whitley, 475 U.S. at 321. Whether there is an Eighth Amendment violation in the context of a prison disturbance depends upon "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 130 S.Ct. 1175, 1178. See also Hudson v. McMillan, 503 U.S. 1, 7, 112 S.Ct. 995 , 117 L.Ed.2d 156 (1992).[5]

Here, the Plaintiff's allegations do not support a claim of excessive force. It is noted that all of the evidence other than Plaintiff's self-serving allegations fail to support a claim of excessive force. Nonetheless, even if an issue of fact exists as to the excessive force claim, Plaintiff fails to

---

[5] While the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins , 130 S.Ct. at 1178. Instead, the extent of injury suffered is just one factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 130 S.Ct. at 1178. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

present evidence of anything other than *de minimus* injury. Plaintiff has not alleged any injury from the alleged slap across the face and there is no medical evidence presented to demonstrate any injury from the alleged excessive force so that any injury was *de minimus*. Thus, the allegations are not sufficient to give rise to a genuine issue of fact as to whether constitutionally excessive force was used against the Plaintiff in this instance. Accordingly, it is recommended that Defendant's motion for summary judgment be granted on the issue of excessive force as the Plaintiff has failed to state an excessive force claim.

As to any claims with relation to the grievance procedure and/or disciplinary procedure at the OCRDC, the claims fail as to this Defendant. Plaintiff has not alleged that this Defendant was personally involved in him being placed in "lock-up" or the grievance system. Defendant, Williams, and Wood have attested that Defendant had no control over the disciplinary process or grievance process at the OCRDC. The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his individual capacity. *See* Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Therefore, it is recommended that these claims be denied and summary judgment granted for the Defendant.

## PENDENT JURISDICTION

Assuming Plaintiff's § 1983 claim is dismissed by this Court and Plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims

if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### III.  CONCLUSION

The Plaintiff has failed to show that the Defendant violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by Defendant Porter (document #47) for summary judgment be GRANTED IN ITS ENTIRETY and this action dismissed.

Respectfully Submitted,

s/Thomas E. Rogers, III

April 29, 2013                                                        Thomas E. Rogers, III
Florence, South Carolina                                    United States Magistrate Judge

**The parties' attention is directed to the important notice on the next page.**